#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL E. G., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00552-SH |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

### OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Daniel E. G. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff protectively applied for Title XVI benefits on August 30, 2018.[2] (R. 11, 204-12.) Plaintiff alleged he has been unable to work since August 28, 2018,[3] due to conditions including asthma, knee pain, anxiety, depression, panic attacks, shoulder pain, degenerative disc disease, sciatica, stroke, and arthritis. (R. 59, 236.) Plaintiff was 59 years old at the time of the ALJ's decision. (R. 20, 58.) Plaintiff has a high school education. (R. 65, 237.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 116-18, 122-26.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on January 6, 2020. (R. 53-78, 127-29.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 11-20.) The Appeals

---

[2] Plaintiff also filed an application for benefits under Title II of the Act, 42 U.S.C. §§ 401-434. The ALJ, however, found that Plaintiff met the insured requirements only through March 31, 1990, and that there were no medical records supporting any impairments prior to the date last insured. (R. 11, 14.) Plaintiff does not appeal this portion of the decision, so the Court's opinion will only refer to the Title XVI application.

[3] In Plaintiff's Title XVI application, it appears he asserts August 28, 2015, as the date he "became unable to work." (R. 205.) However, Plaintiff testified at hearing that August 28, 2018, was his alleged onset date (R. 59), and this is the date the ALJ utilized in her decision (R. 11). As Plaintiff does not challenge this alleged onset date after being given sufficient notice (R. 57, 59, 170), the undersigned finds no error.

3

Council denied review on August 31, 2020 (R. 1-6), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff timely filed this appeal on October 30, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III. The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 28, 2018. (R. 14.) Although the ALJ found that Plaintiff had medically determinable impairments at step two (R. 16),[4] she concluded that such impairments were not severe from August 28, 2018, through the date of the decision (R. 14-20). Because the ALJ determined Plaintiff did not have a severe impairment or combination of impairments, she denied Plaintiff's claims at step two and did not proceed further in the sequential evaluation. (R. 20.)

## IV. Issues

Plaintiff raises two allegations of error in his challenge to the denial of benefits: (1) the ALJ erred in concluding that Plaintiff's medically determinable impairments were not severe at step two; and (2) the ALJ failed to "fully and fairly" develop the record. (ECF No. 20 at 9-15.) The undersigned finds the ALJ did not so err, and the decision is affirmed.

---

[4] The ALJ noted she followed a two-step process in analyzing Plaintiff's symptoms, first determining whether Plaintiff had a medically determinable physical or mental impairment that could be shown by medically acceptable clinical or laboratory diagnostic techniques and could reasonably be expected to produce Plaintiff's symptoms. (R. 15.) At this step, the ALJ found "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," implying she found impairments to exist. (R. 16.) The ALJ did not specifically state which impairments she found medically determinable. (R. 14-20.) However, the impairments she discussed in her review of the medical records included those complained of in this appeal—Plaintiff's alleged knee and shoulder impairments, as well as his frequent chest pain. (R. 16-19.)

## V. Analysis

### A. The ALJ's Step-Two Evaluation was Proper.

Plaintiff argues the ALJ failed to correctly apply the *de minimis* burden of proof needed to show a severe impairment at step two. (*Id.* at 10-13.) Specifically, Plaintiff maintains that his "ongoing problems with right knee and left shoulder pain" amounted to severe impairments, which he argues were verified by diagnostic imaging that "showed abnormalities consistent with [his] reports of pain." (*Id.* at 10.) Plaintiff contends the ALJ's step-two analysis mischaracterized such evidence and "ignored or overlooked pertinent findings that conflicted with [her] conclusion that Gray suffered from no severe impairments." (*Id.* at 10-11.) After a review of the administrative record and the ALJ's decision, the Court disagrees.

At step two of the sequential evaluation, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments by evaluating "the impact the impairment would have on [the claimant's] ability to work." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also* 20 C.F.R. § 416.920(a)(4)(ii) & (c). A claimant has satisfied his burden at step two only if he has shown his impairment or combination of impairments to be "severe," *i.e.* that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[5] 20 C.F.R. § 416.920(c). An impairment is not severe if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities with no more than a minimal effect on an individual's ability to work. *See* SSR 85-28, at *3.

Plaintiff's burden at step two requires he make only a *de minimis* showing of

---

[5] As the ALJ noted, basic, physical work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." (R. 14-15 (citing Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)).)

5

impairment, but he still must demonstrate "more than the mere presence of a condition or ailment." *Hinkle*, 132 F.3d at 1352. In determining whether a severe impairment exists, the Commissioner considers the "effect" of the impairment on Plaintiff's ability to work. *See generally*, 20 C.F.R. § 416.920(c); *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("when Congress codified the severity requirement in the regulations, it noted that a claimed 'physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*.'" (citation omitted)).

In his brief, Plaintiff points to diagnostic imaging and objective examinations—along with his subjective reports of pain—as evidence that his medically determinable impairments were severe. (ECF No. 20 at 10-13.) Specifically, he refers to an x-ray from August 2017 (a year prior to his alleged onset of disability) that revealed "small joint effusion" (*id*. at 12 (citing R. 358 (Ex. B2F))) and another from November 2018 showing "mild infrapatellar fat pad edema" and "moderate tricompartmental osteoarthritis" in his right knee (*id*. (citing R. 2088 (Ex. B14F))). Plaintiff also highlights imaging of his left shoulder from June 2018 (prior to his alleged disability onset) showing "mild degenerative change of the left acromioclavicular joint" and from October 2018 purportedly showing "acromioclavicular arthrosis."[6] (*Id*. (citing R. 392 (Ex. B2F), 1666 (Ex. B12F)).) Lastly, Plaintiff identifies one occasion from April 2018 (prior to disability onset) where, though Plaintiff had normal range of motion, he demonstrated "mildly antalgic gait" and self-reported "pain with palpation" of the right knee. (*Id*. (citing R. 856 (Ex. B7F)).)

---

[6] The physician's impression from the October x-ray, however, was that there were "[n]o acute findings of the left shoulder." (R. 1666.)

The ALJ, however, considered this evidence as a part of her step-two evaluation.[7] (R. 17.)  More importantly, however, the mere presence of a condition or ailment does not establish a severe impairment.  *Williamson*, 350 F.3d at 1100.  What Plaintiff must show to meet his minimal burden at step two is that such a condition or impairment caused a significant limitation in his ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c); *Williamson*, 350 F.3d at 1100.  Plaintiff has pointed to no portion of the record that demonstrates he is significantly limited in his ability to do basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  Instead, Plaintiff claims "the record contained no medical evidence addressing Gray's functional limitations." (ECF No. 20 at 13.)

As discussed below, this is not entirely correct.  As the ALJ noted in her decision, the record consistently demonstrated Plaintiff was only minimally limited in his physical capabilities.[8]  (R. 14-20.)  The Court will not reweigh the record evidence already

---

[7] The ALJ explicitly cited in her decision the exhibits from which three of Plaintiff's examples are drawn.  (R. 17 (citing to exhibits B2F and B12F).)  The ALJ also directly referenced another exhibit which purportedly evidenced Plaintiff's severe impairment in her written decision and at hearing (R. 11, 56 (referring to exhibit B14F)), in addition to listing it, and the last exhibit Plaintiff relies on (B7F—which refers to examinations prior to Plaintiff's alleged onset of disability), is in her final list of exhibits (R. 21-24).

[8] Though the undersigned declines to summarize the entirety of the evidence set forth by the ALJ, it notes that she considered, among other things, the fact that Plaintiff acts as a caregiver for his fiancé and picks up cans for resell (R. 14); often walks for transportation (R. 15-16); often presented, upon examination, with normal muscle strength and tone in his extremities, normal range of motion, and normal grip strength (R. 16-19); and consistently underwent imaging that showed no abnormalities in his left shoulder or right knee (R. 17-19).  Only in light of this evidence—and after comparing the objective evidence to Plaintiff's subjective complaints (R. 14-20)—did the ALJ determine that the evidence "does not support the presence of any severe impairment or a functional limitation" in Plaintiff's ability to do basic work activities (R. 16).  This is not a case where there was "no evidence whatsoever regarding the impact of any impairment on claimant's ability to do basic work activities."  *Cf. Duncan v. Shalala*, 5 F.3d 545, 1993 WL 318854, at *3 (10th Cir. 1993) (unpublished) (cited in ECF No. 20 at 11, 14).

considered by the ALJ. *Bowman*, 511 F.3d at 1272. There is substantial evidence supporting the ALJ's finding that Plaintiff failed to meet the minimal burden.

In any event, Plaintiff's primary point of contention appears to be that the ALJ did not seek out additional evidence that would indicate a limitation resulting from his complaints.

### B.  The ALJ Did Not Err by Declining to Order a Consultative Examination.

In tandem with his argument regarding the step-two evaluation, Plaintiff also avers that the ALJ failed "to explain why she chose not to exercise her duty to fully and fairly develop the record by obtaining additional evidence in the form of a consultative examination or medical expert interrogatories." (ECF No. 20 at 13.) To bolster this claim, Plaintiff primarily relies on the contention that because the ALJ found the prior administrative medical findings persuasive (R. 19-20), and because the prior administrative consultants determined there was insufficient evidence to make findings regarding Plaintiff's functional limitations (R. 101, 110), the record must be deficient and in need of further development (ECF No. 20 at 13-15).[9] The undersigned does not find this to be the case. Because the need for a consultative examination or medical expert interrogatories was not clearly established by the record, the Court holds the ALJ's decision not to order further evaluation was appropriate.

---

[9] Plaintiff also relies on *Duncan* to support his contention that the ALJ was under an obligation to further develop the record. (ECF No. 20 at 14.) However, *Duncan* is distinguishable. *Duncan*, 1993 WL 318854, at *3 (ALJ, who was under a "heightened" duty to inquire and develop the record because the plaintiff was not represented by counsel, relied only on "blood gas studies supposedly done during the relevant time period and on claimant's history of sporadic medical treatment" to justify stopping the sequential evaluation at step two, as opposed to relying on the entire administrative record as the ALJ did here).

8

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Still, the ALJ has a basic obligation in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). This duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to [her] decision and learns the claimant's own version of those facts." *Id.* (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

As part of this general obligation, "the Secretary has broad latitude in ordering consultative examinations." *Id.* at 1166. Even so, an examination may be required when there is a "direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, . . . [or] where additional tests are required to explain a diagnosis already contained in the record . . . ." *Id.* (citations omitted); *see also* 20 C.F.R. §§ 416.919-416.919b. Any consultative examination that is ordered must "reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. Though the ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," *id.* at 1164 (quoting *Henrie*, 13 F.3d at 360-61), "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development," *id.* at 1167. "In the absence of such a request by counsel, [the Court] will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

9

In the matter at hand, Plaintiff was represented by counsel at the hearing. (R. 53.) Plaintiff's counsel did not identify any areas that required further investigation or otherwise challenge the sufficiency of the record. "[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . . ." *Branum*, 385 F.3d at 1271 (quoting *Hawkins*, 113 F.3d at 1167). As Plaintiff's counsel did not request a consultative examination, the Court will only find the ALJ under an obligation to further develop the record if Plaintiff <u>clearly establishes</u> that such a need exists. Plaintiff has not.

As noted above, Plaintiff highlights the findings of the prior administrative reviewers in arguing the ALJ should have further developed the record. In the first administrative determination, Dr. David Coffman noted,

> Further information regarding [the claimant's] daily activities was needed to completely evaluate his conditions. Currently the claimant's whereabouts are unknown. Therefore, there is insufficient evidence available to show that he is unable to work.

(R. 101.) On reconsideration, Dr. Matheen Kahn noted,

> At recon level, [claimant] says there is no change in his condition and no further treatment, according to [claimant's representative], who advises that [claimant's] whereabouts are unknown.
>
> There is no functional information in [the] file to help determine if [claimant] has a severe MDI [medically determinable impairment] that would result in disability benefits. As a result, [claimant] is determined not disabled at Step 2 due to insufficient information and failure to cooperate.

(R. 110). Plaintiff argues "[n]either consultant . . . had the opportunity to review subsequent evidence documenting a worsening of impairments" and further that they show "the record contained no medical evidence addressing Gray's functional limitations." (ECF No. 20 at 13, 15.) These findings, however, do not support the conclusion that a consultative examination was necessary to ensure Plaintiff's claims were adequately explored.

First, the only record Plaintiff cites as evincing a "worsening" right knee impairment is from August 2017. (*Id.* (citing R. 358).) This x-ray, taken at St. John Medical Center, occurred prior to both administrative findings.[10] (R. 100-01, 109-10.)

Second, Plaintiff's characterization of the ALJ's use of the prior administrative medical findings is flawed. The ALJ did not find the record was inadequate; she simply found that it did not contain evidence supporting Plaintiff's arguments. The ALJ reviewed the prior administrative medical findings and found them persuasive because "<u>additional</u> medical evidence does not support the presence of any functional limitation" or "severe impairment." (R. 19-20 (emphasis added).) Numerous times throughout her decision she discussed evidence that she adduced did "not support the presence" of a functional limitation or severe impairment. (R. 16-19.) Much of this evidence was reviewed above. (*See supra* n.8.) This evidence showed functional capabilities that were inconsistent, the ALJ found, with the potentially severe limitations Plaintiff alleged.[11] There is substantial evidence supporting this finding. *Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed for ALJ to make

---

[10] Both Drs. Coffman and Kahn noted that records from St. John had been received for their review as of 2018. (R. 100, 109.)

[11] Plaintiff is correct in noting that he "frequented the emergency room" to seek treatment for reasons related and unrelated to his alleged impairments. (ECF No. 20 at 12.) The ALJ, however, considered several of these visits, detailing Plaintiff's treatment both before and during the alleged onset of his disability. (R. 16-19.) Despite the many traumas Plaintiff purported to have suffered, the physical findings and observations at those visits were, at times, noted by the ALJ to be unremarkable. (*See, e.g.*, R. 16-17 (citing R. 390-91, wherein Plaintiff presented with shoulder pain but upon physical examination appeared to have full range of motion); R. 17 (citing R. 1739-40, where Plaintiff presented with complaints of right knee pain but had no musculoskeletal abnormality, no limitation in range of motion, no edema, and could ambulate normally and walk up to two miles); R. 18 (citing R. 1266-67, where Plaintiff presented with complaints of knee pain but was able to walk without difficulty).) The ALJ waded through these records to obtain a contemporaneous understanding of Plaintiff's abilities. This is not a case where the claimant has not been able to access medical help and, therefore, the record is truly devoid of independent medical observations regarding his abilities.

11

her disability determination"). Plaintiff has not "clearly established" a need to develop the record further.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 21st day of March, 2022.

                                            **SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
                                            **UNITED STATES DISTRICT COURT**